706 P.2d 761

**In the Matter of the APPEAL IN PIMA COUNTY, MENTAL HEALTH NO. MH–254–3–85.**

**No. 2 CA–CIV 5414.**

Court of Appeals of Arizona, Division Two, Department A.

Sept. 19, 1985.

Robert B. Fleming, Pima County Public Fiduciary by Alyce Pennington, Tucson, for appellant.

Stephen D. Neely, Pima County Atty. by Martha M. Durkin, Tucson, for appellee.

OPINION

BIRDSALL, Presiding Judge.

This appeal is from the January 14, 1985, order of the trial court finding J.W. to be a danger to herself as the result of a mental disorder and providing for up to ninety

days inpatient treatment at Kino Community Hospital. The order also provided for the right to approve an outpatient plan for an additional 275 days if necessary. The trial court also found that without such treatment J.W. would come to serious harm and was unable to accept sufficient voluntary treatment to keep herself safe.

Two issues are presented:

1) does the evidence support the finding that the appellant was unable to accept sufficient voluntary treatment to prevent harm to herself, and

2) does the evidence support the finding that appellant was a danger to herself.

We have reviewed the entire record. It consists of prior petitions for evaluation in 1977 and 1978, both of which were dismissed because the patient was admitted for further care and treatment on a voluntary basis; the petition and orders resulting in this appeal, and a transcript of the hearing on January 14, 1985. The witnesses testifying at that hearing, in addition to J.W., were Dr. Robert Van Putten, psychiatrist; Dr. Donald Garland, psychiatrist; Edna Aguilar, a counselor at a residential treatment center where J.W. had lived and received voluntary treatment; Robert Dieter, case manager and crisis counselor for La Frontera, and the applicant in the petition; and Brent Pichler, program coordinator for a mental health organization. Both of the psychiatrists filed written evaluations pursuant to A.R.S. § 36–533. Their evaluations were admitted during their testimony and included in the appellate record.

Both psychiatrists were very informed concerning J.W.'s past history and present condition. The three lay witnesses were also extremely well versed in J.W.'s history and condition, each of them having worked with her at one time or another for the past three years or more.

■ We find from our review that there is overwhelming evidence to support all of the findings made by the trial judge. We find the issues raised in this appeal to be completely without merit. We affirm.

The evidence supporting the court's findings is summarized as follows:

J.W.'s history of a mental disorder goes back to the early 1970s. She has been admitted to psychiatric facilities on several occasions. For approximately the last three years, she was living in residential treatment centers in Tucson. In October or November of 1984, she was admitted to Kino Hospital several times because she was failing to take care of herself. During that time, she lost weight and was discussing suicide plans with the staff workers in the residential treatment programs.

At the hearing, the two psychiatrists testified regarding their evaluations of the patient. J.W. had failed to cooperate in the program which had been established for her. On December 31, 1984, she barricaded herself in her apartment. She would not answer the door for Dieter, making it necessary for him to get the police to enter the home. The appellant was found curled up under the covers and appeared to be unconscious. However, when aroused, she became angry and refused to go anywhere.

Both psychiatrists concluded that the appellant suffers from a severe and chronic mental disorder, namely major depressive episodes, recurrent, with psychotic features. Dr. Garland further testified that J.W. actively presented a danger to herself by virtue of starvation, and that she had engaged in this behavior in the past during her severe depressive episodes.

Dr. Van Putten found that based on the patient's behavior over the past several months, along with clinical observations and statements made by the patient, if her mental illness was left untreated, there was a significant risk of serious harm in the near future. He testified that her weight loss in December indicated about fourteen days of not eating. The medical records showed that the patient weighed 120 pounds in August 1984, and 98 pounds on January 2, 1985. He testified that this was a serious weight loss.

Every witness testified that appellant had not been regularly taking her prescribed medications. Her participation in

therapy and vocational programs was sporadic and she would not cooperate. Prior to these proceedings she had become paranoid. Further voluntary treatment was out of the question.

We appreciate that the involuntary commitment of the appellant, or any patient, deprives her of her liberty. The commitment may also have other serious, permanent implications. Despite efforts to recognize mental illness for what it is, an illness and not more, there is still some social stigma attached.[1] However, when the mental illness is such that one's health is endangered, our legislature has provided a method to secure necessary treatment for the person. Serious, permanent consequences may arise from a failure to hospitalize a patient when necessary.

Our legislature has also provided that an appeal may be taken from an adjudication and commitment. A.R.S. § 36–546.01. Such an appeal should be taken where questions of law are presented and where the evidence is such that there is some reason to believe the trial court's findings of fact are clearly erroneous. This is not such a case. This appeal places an unnecessary burden on the clerk below, the county attorney, the court reporter, and this court. It is surely not necessary that this court review each and every commitment. This appeal is frivolous. No reasonable attorney could have thought it meritorious. See *Price v. Price*, 134 Ariz. 112, 654 P.2d 46 (App.1982).

Affirmed.

---

1. A reported mental illness cost Senator Thomas Eagleton of Missouri the Democratic vice presidential nomination in 1972.